IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

UNITED STATES OF AMERICA,

    Plaintiff - Respondent,

v.                                                               CIV 14-1045 SWS/KBM
                                                                                   CR 13-3357 SWS

LLOYD JONATHAN FRY,

    Defendant - Movant.

# PROPOSED FINDINGS AND CONCLUSIONS OF LAW

In this action under 28 U.S.C. § 2255, Defendant-Movant Lloyd Jonathan Fry ("Fry") seeks to set aside his conviction for possession of pipe bombs in violation of 26 U.S.C. §§ 5841, 5845(a)(8), 5861(d) and 5871. *See* Motion to Vacate (Civ. 14-1045, Doc. 1). Fry raises a number of arguments that his sentence is illegal and must be set aside, chief among them his defense attorney's failure to file a motion to suppress evidence obtained from a search of Fry's vehicle. Because I find that "the files and records of the case conclusively show" that Fry is "entitled to no relief," I recommend that the Court deny Fry's motion without holding an evidentiary hearing. *See* 28 U.S.C. § 2255.

I. Background

    a. Fry's arrest

On May 27, 2013, Defendant and a companion entered a U.S. Border Patrol ("USBP") Checkpoint located on Highway 70 west of Alamogordo, New Mexico about

70 miles north of the Mexico border. Complaint (Cr. 13-3357, Doc. 1) at 2; Motion to Vacate at 2. While waiting in line to be questioned by border patrol agents, a trained USBP canine alerted to the right-hand saddlebag of Fry's motorcycle, which was in tow on a trailer attached to Fry's vehicle. Complaint at 2; Motion to Vacate at 2. USBP agents then directed Fry, his companion and their vehicle to move to the secondary inspection area where the vehicle and trailer were subjected to another dog sniff. Complaint at 2; Motion to Vacate at 2. The dog again alerted, and agents searched the vehicle and the trailer behind it. The agents discovered a large quantity of firearms, ammunition, about 2 pounds of marijuana, scales, grow lights and drug paraphernalia. Complaint at 3, Doc. 40 at 3. Later, agents also uncovered a plastic carrying case that contained four pipe bombs. *Id.* Bomb squads were summoned; two of the bombs were destroyed in controlled detonations. *Id.*

    b. **Court Proceedings**

At his initial appearance on May 29, 2013, Fry was represented by James Langell of the Federal Public Defender's Office, as is the routine practice in Las Cruces. After the initial appearance, the Court appointed from Ken Del Valle, a criminal defense attorney based in El Paso, Texas to represent Fry. Del Valle first moved to determine Fry's competency to stand trial. After Fry was found competent to proceed, on his attorney's recommendation, Fry waived his right to a preliminary hearing and indictment within 30 days of arrest. About two and a half months later, Del Valle arranged for Fry to plead guilty to an Information (Cr. 13-3357, Doc. 33) charging him with knowing receipt and possession of four pipe bombs in violation of 26 U.S.C. §§ 5841, 5845(a)(8), 5861(d), and 5871.

In the Plea Agreement that Fry signed (Cr. 13-3357, Doc. 36), he admitted that he knowingly possessed four pipe bombs. Fry also agreed not to appeal his conviction and the sentence he received and to "waive any collateral attack to this conviction pursuant to 28 U.S.C. § 2255, except on the issue of counsel's ineffective assistance in negotiating or entering this plea or this waiver." Plea Agreement at 6. At the hearing where Fry entered his guilty plea before Magistrate Judge Carmen Garza, the Court further made sure that Fry understood that he was waiving his rights to appeal and collaterally attack the sentence; Fry indicated that he understood that waiver. Civ. 14-1045, Doc. 9-1 at 11–12. Also at that hearing, Fry acknowledged that he was giving up his right to challenge the constitutionality of the USBP agents' stop, search and seizure of his vehicle. *Id.* at 12. Fry stated under oath that his attorney had provided satisfactory advice and representation, and that his guilty plea to the Information was not coerced. *Id.* at 4, 6. Fry consented to plead guilty before Judge Garza who expressly found that Fry entered his guilty plea knowingly and voluntarily and that there was a factual basis for the plea. Fry was later sentenced by the presiding United States District Judge Skavdahl, sitting by designation, to a 36-month term of imprisonment (a downward variance of ten months from the applicable advisory guideline range) followed by a three-year term of supervised release. Judgment (Cr. 13-3357, Doc. 44).

**II. Fry's Motion to Vacate Pursuant to 28 U.S.C. § 2255**

Fry argues that his sentence must be vacated because he received ineffective assistance of counsel and raises six claims: (a) the Assistant Federal Public Defender ("AFPD") who represented Fry at his "arraignment"[1] was ineffective because he waived

---

[1] Fry apparently confuses his first appearance in court with an arraignment, which occurs only after the filing of an indictment or information. *See* Fed. R. Crim. P.10.

3

all of Fry's rights (Motion to Vacate at 4); (b) Del Valle was ineffective because he (i) threatened Fry with a 30-year prison sentence if Fry did not waive his right to trial and enter into a plea agreement with the Government (Motion to Vacate at 4–5), (ii) prevented Fry from telling the sentencing judge that he had been coerced into pleading guilty (Motion to Vacate at 5–6), (iii) failed to file a motion to suppress the evidence gathered from the search of his car and trailer, despite Fry's express instructions to do so (Motion to Vacate at 5), (iv) failed to object to a four-level enhancement for possessing pipe bombs in connection with another felony (Motion to Vacate at 6), and (v) otherwise failed to provide fair and impartial representation (Motion to Vacate at 11); and (c) that his conviction for possession of pipe bombs violates the Second Amendment of the United States Constitution (Motion to Vacate at 10).

### III. Applicable standards of review

#### a. Motion to Vacate Under 28 U.S.C. § 2255

Under 28 U.S.C. § 2255, a court is permitted to vacate, correct or set aside a sentence that was "imposed in violation of the constitution or laws of the United States, or that the Court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to a collateral attack." 28 U.S.C. § 2255. Section 2255 presumes that the movant is entitled to an evidentiary hearing on his claims unless the record conclusively establishes that the defendant is not entitled to relief. 28 U.S.C. § 2255(b).

#### b. Ineffective assistance of counsel claims under Section 2255

In order to obtain relief under 28 U.S.C. § 2255 for ineffective assistance of counsel, a movant-defendant must show that (1) his lawyer's performance was

objectively unreasonable, and (2) but for the lawyer's ineffective assistance, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 687 (1984). The Court must accept the truth of the movant-defendant's factual allegations unless they are frivolous in light of the record. *Government of the Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989). The movant-defendant must overcome a strong presumption that his counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 690.

### c. Waiver of rights to collaterally attack a sentence

A defendant may waive his right to attack his sentence under 28 U.S.C. § 2255 by entering into a plea agreement that contains an express waiver of § 2255 rights and the defendant signed that plea agreement knowingly and voluntarily. *United States v. Cockerham*, 237 F.3d 1179, 1183 (10th Cir. 2001). When a plea agreement contains a valid waiver of a defendant's right to collaterally attack his sentence under 28 U.S.C. § 2255, the defendant may only move to vacate his sentence based on allegations that his counsel was ineffective with respect to the negotiation of the waiver in the plea agreement. *Id.* at 1185.

## IV. Discussion

### a. Fry's ineffective assistance claim against the AFPD

Fry argues that he told the AFPD who represented him at his initial appearance, "I want to go to trial." Motion to Vacate at 4. The AFPD then allegedly "malicious[ly]" attempted to waive Fry's constitutional rights. Fry maintains that he stated on the record

that "I do not give up my rights, I'll represent myself, I motion [sic] to set trial." Motion to Vacate at 4-5.

The Government argues that Fry's ineffective assistance of counsel claim against the AFPD at his initial appearance does not relate to Del Valle's negotiation of the waiver of rights in Fry's plea agreement. I agree. Fry did not enter into a plea agreement at his initial appearance, and the AFPD Langell did not have any role in negotiating the waiver included in the Plea Agreement that Fry signed several months later.

Even if Fry had not waived his right to challenge the effectiveness of AFPD Langell, I find that the record conclusively establishes that Fry is not entitled to relief on this claim. First, with respect to the objective ineffectiveness prong of *Strickland*'s two-part test, the record does not indicate that his representation was objectively unreasonable. In the audio recording of Fry's initial appearance, AFPD Langell at no point states that Fry waived any of his rights. Instead, the AFPD requests that Fry be interviewed by pretrial services to determine whether he could be released on conditions until the time of his trial. In fact, AFPD Langell expressly stated, "We invoke [Fry's] constitutional rights." The magistrate judge then says, "Okay, each of you [that is, Fry and his companion] will be interviewed, each of you will be back in court tomorrow for a preliminary hearing and a detention hearing. At this time you are remanded into custody of the United States Marshal."

In the recording, Fry interrupts the magistrate judge before she finishes speaking. The recording captures the following exchange between Fry and AFPD Langell:

> FRY:   Ma'am [inaudible]? Is there any possible way that her [Fry's companion] and I can be together?
> AFPD: Shh.

6

>
> FRY:   And also, uh, I have a prescription, we both have a prescription, we have a lot of pain, um, for marijuana.
> AFPD:  You won't be getting any marijuana as part of your medical care at the clinic. Talk to your attorney okay? Remember when I told you about your right to remain silent? Keep that right, okay?
> FRY:   [inaudible] motion to set trial? I want a motion to set trial.

The magistrate judge does not respond to Fry's "motion to set trial" comment and instead calls the next case. My review of the recording of the initial appearance absolutely contradicts the claims made by Fry against the AFPD who represented him at the initial appearance. Far from "giving up" Fry's rights, AFPD Langell was zealously protecting Fry's rights by attempting to prevent him from making incriminating statements that the Government could use against him at trial. *See* Fed. R. Crim. P. 5(d)(1)(E). Although Fry later waived his right to a preliminary hearing and to a speedy indictment (CR. Docs. 20, 24, 25, 27), he did so on the advice of Del Valle, not the AFPD who represented him at the initial appearance.

Moreover, Fry was not entitled to proceed immediately to trial at his initial appearance. *See* Fed. R. Crim. P. 5, 5.1. At most, Fry could proceed to a preliminary hearing to determine whether there was probable cause to bind Fry over for trial on the charges set forth in the criminal complaint. Even if he had decided to exercise his right to a preliminary hearing, Fry would not have been allowed to object to any evidence presented at that hearing on the ground that it was unlawfully obtained. Fed. R. Crim. P. 5.1(e).

In sum, I conclude that Fry waived his right to pursue an ineffective assistance of counsel claim against AFPD Langell because he executed a valid waiver of that right in his plea agreement. Even if he did not waive his right, the record conclusively

7

demonstrates that AFPD Langell provided Fry with constitutionally effective assistance of counsel.

### b. Ineffective Assistance of Counsel Claims against Del Valle

#### (1) Del Valle's "threat" of a 30-year prison sentence if he did not waive his right to trial and enter into a plea agreement

Fry argues that despite his desire to "fight his case" by filing a motion to suppress the evidence against him, Del Valle cajoled him into a plea agreement by threatening him with the possibility of a 30-year sentence. Motion to Vacate at 5. In other words, Fry contends that Del Valle falsely told Fry he would be sent to prison for 30 years if he filed a motion to suppress and otherwise fought the Government's case against him.

To be sure, if Fry had filed a motion to suppress the evidence against him, he would not necessarily have been imprisoned for 30 years. But this was not the gist of Del Valle's advice. *See* Del Valle Affidavit, Civ. 14-1045, Doc. 9-3. Rather, Del Valle was sensibly telling Fry that he should consider two things before insisting on filing a motion to suppress: (1) if he forced the Government to litigate a motion to suppress and Fry lost, the Government would be more willing to proceed to a trial on the charges; and (2) if the Government chose to charge Fry with possession of a firearm in furtherance of a drug trafficking crime in violation of 18 U.S.C. § 924(c) and Fry was convicted, his possession of four "destructive device[s]" (i.e., the four pipe bombs) would expose him to a mandatory minimum sentence of 30 years incarceration. *See* Del Valle Affidavit; *see also* 18 U.S.C. § 924(c)(1)(B)(ii).

The record conclusively establishes that Fry is not entitled to relief on this ineffective assistance of counsel claim against Del Valle. Even if I did not have to presume that Del Valle was providing effective assistance, Fry's claim fails. Even now,

8

Fry does not dispute that he possessed four pipe bombs – his only contention is that as a combat veteran, he possessed the pipe bombs in order to "feel safe in a hostile environment." Motion to Vacate at 10. Even if a reasonable person would have been sympathetic to Fry's explanation, this would have no bearing on whether or not he "possesse[d] a firearm" in furtherance of a drug trafficking crime. *See* 18 U.S.C. § 924(c)(1)(A). And since § 924(c) imposes a mandatory minimum sentence of 30 years imprisonment for convictions involving possession of destructive devices, even a sympathetic sentencing judge would have no choice but to impose a 30-year sentence.

In other words, Fry's allegation that Del Valle coerced him into pleading guilty by "threatening" him with a 30-year sentence is frivolous in light of the record, *Government of the Virgin Islands v. Forte*, 865 F.2d 59, 62 (3d Cir. 1989). In fact, Fry responded "No, Ma'am" when Judge Garza expressly asked Fry, "is <u>anyone</u> forcing or threatening you to plead guilty today?" Doc. 9-1 at 4-5 (emphasis added). Simply put, the record reveals that Fry faced a 30-year sentence if the Government chose to pursue, and Defendant was convicted of, § 924(c) charges. Thus, Del Valle was not constitutionally ineffective when he informed Fry about a possible 30-year mandatory minimum sentence if he litigated this case to a jury verdict. Rather, it likely would have constituted ineffective assistance had Del Valle failed to so advise his client.

### (2) Del Valle silenced Fry at the sentencing hearing when he wanted to reject the plea agreement and proceed to trial

Fry next contends that even if Del Valle reasonably informed him about the possible consequences of failing to enter into a plea agreement, Fry later decided that he preferred to proceed to trial anyway. As evidence of this, Fry asserts that during sentencing, "the Court never asked if Mr. Fry's attorney ever made any threats to

9

coerce or intimidate Mr. Fry into signing the plea…." Fry asserts that he asked the Court for the opportunity to speak, but that Del Valle silenced him. Motion to Vacate at 5–6.

I find both arguments frivolous because the question of whether Fry entered into the plea agreement knowingly and voluntarily was decided at the hearing where his guilty plea was accepted by the magistrate judge, not at the time of his sentencing hearing. And at his change of plea hearing, Fry testified that he was satisfied with his attorney and that he knew he was giving up his right to challenge the stop, search, and seizure of the evidence against him and contest his guilt at trial. Civ. 14-1045, Doc. 9-1 at 12. Therefore, Fry's ineffective assistance of counsel claim on this ground should be denied.

### (3) Del Valle's failure to file a motion to suppress the evidence gathered from the search of his car and trailer

Fry next asserts that Del Valle was ineffective by refusing to file a motion to suppress the evidence against him. Motion to Vacate at 5, 8. Fry argues that a motion to suppress the Government's evidence against him would have been successful because the USBP officers did not have reasonable suspicion to stop Fry and subject his vehicle to a dog sniff. Motion to Vacate at 8. This claim is based on three arguments: (1) the USBP checkpoint, "70+ miles from the [U.S.-Mexico] [b]order," is unconstitutional; (2) USBP agents had no reasonable suspicion to stop Fry and subject his car to a dog sniff; and (3) because he used his car like a home, the USBP agents needed to obtain a warrant in order to search his vehicle. Motion to Vacate at 8, 9.

Fry's first contention is clearly without merit; the Tenth Circuit has upheld the constitutionality of a Border Patrol checkpoint if it is located within one-hundred miles from the border. *United States v. Anderson,* 468 F.2d 1280, 1282 (10th Cir.1972).

As to Fry's second contention, it is well established that agents of the United States may make suspicionless stops of motorists near international borders at permanent checkpoints in order to ascertain whether the motorist and his companion(s) have a "'right to be in the United States.'" *United States v. Martinez-Fuerte*, 428 U.S. 543, 558 (1976) (quoting *United States v. Brignoni-Ponce*, 422 U.S. 873, 880 (1975)). Moreover, "[d]uring routine fixed-checkpoint stops, border patrol agents "may also may make a cursory visual inspection of the vehicle and may briefly question an individual 'concerning such things as vehicle ownership, cargo, destination, and travel plans,' provided that such questions are 'reasonably related to the agent's duty to prevent the unauthorized entry of individuals into this country and to prevent the smuggling of contraband.'" *U.S. v. Solano Rodriguez*, 173 F.3d 865 (Table) at *4 (10th Cir. 1999) (unpublished) (quoting *U.S. v. Rascon-Ortiz*, 994 F.3d 749, 752 (10th Cir. 1993).

Here, the decision to detain Fry was not based solely on inconsistent answers to the agents' questions. Rather, the drug-detection canine's alert to Fry's trailer provided probable cause supporting Fry's continued detention and a warrantless search of his vehicle and trailer. *See Florida v. Harris*, 568 U.S. \_\_\_, 133 S.Ct. 1050, 1056 (2013). Thus, there is no reasonable likelihood Fry would have prevailed on a motion to suppress based on a lack of reasonable suspicion to detain him. This disposes of Fry's first two arguments for suppression.

As to his third argument, Fry contends that because his Mercedes SUV was a "modernized mobile home/SUV," his vehicle should be considered a home for Fourth Amendment purposes, and therefore USBP agents were required to obtain a warrant to search the vehicle. Motion to Vacate at 9. There are two problems with this argument.

First, whether or not a container is a home or a vehicle does not depend, as Fry would have, on whether the container is able to be lived in. Instead, it depends on whether or not the container has the "capacity to be quickly moved…." *California v. Carney*, 471 U.S. 386, 390 (1985) (quotation omitted). While the *Carney* court held out the possibility that a mobile home could be considered a home for Fourth Amendment purposes, the Court's dicta identified evidence of immobility as the key consideration. *Id.* at 394 n.3. The fact that Fry drove his vehicle into the checkpoint forecloses any possibility that his "home" was incapable of being moved and thereby subject to the warrant requirement.

Fry also argues that his prescription for medical marijuana and his sincere belief in Rastafarianism, specifically its use of marijuana as a sacrament, preclude a finding of probable cause to search for evidence of other crimes based on his possession marijuana. Motion to Vacate at 7, 11. The problem with this argument is that even if Fry could make a defense to criminal liability for possessing marijuana based on his religious beliefs, *see United States v. Bauer*, 84 F.3d 1549, 1559 (9th Cir. 1996), the USBP agents would have still had probable cause to search his vehicle and discover the pipe bombs that formed the basis of his conviction.

### (4) Del Valle failed to object to a four-level enhancement for possessing pipe bombs in connection with another felony

Fry asserts that Del Valle was constitutionally ineffective because he failed to successfully argue against a four-level enhancement for using the pipe bombs in connection with another felony offense under U.S.S.G. § 2K2.1(b)(6)(B). I agree with the Government that Fry waived this argument by entering into the plea agreement, and that this claim should be dismissed on that basis.

Alternatively, Fry's attorney in fact argued the issue at sentencing. *See* Cr. 13-3357, Doc. 38; Civ. 14-1045, Doc. 9-2 at 10–13. Fry essentially asks me to find that because the sentencing court imposed the four-level enhancement, it must have resulted from Del Valle's ineffective assistance. But as the Government points out, the sentencing judge heard several arguments from the Government about why the enhancement applied, and chose to apply it after hearing argument from both sides and conducting an independent review of the case law. *See* Civ. 14-1045, Doc. 9-2 at 14. I therefore conclude that Fry's ineffective assistance of counsel claim based on a failure to successfully argue against a four-level enhancement under U.S.S.G. § 2K2.1(b)(6)(B) should be denied to the extent that it was not already waived.

On related grounds, Fry argues that the sentencing judge's use of relevant conduct that was not part of the admissions of fact in his plea agreement violates his right to due process. Specifically, Judge Skavdahl considered Fry's possession of pound quantities of marijuana which would amount to a felony under New Mexico law as well as scales and lights used in the production and distribution of marijuana, and he noted the close proximity of the weapons to the drugs. To the extent that this claim is not waived by the plea agreement, I find that it is frivolous. *See United States v. Watts*, 519 U.S. 148, 152 (1997) (per curiam) (there is no "blanket prohibition against considering certain types of evidence at sentencing.").

### (5) Del Valle failed to provide fair and impartial representation

Fry finally argues that Del Valle was constitutionally ineffective because in his role as a "court-appointed" attorney, he was prevented from zealously advocating on Fry's behalf. To the extent that Fry did not waive the argument in his plea agreement, I

again find it frivolous. Zealous representation does not mean doing whatever the client tells the lawyer to do. *See* Rule 16-102 NMRA cmt. 2 ("Clients normally defer to the special knowledge and skill of their lawyer with respect to the means to be used to accomplish their objectives, particularly with respect to technical, legal and tactical matters."). To be sure, if Fry's objective was to proceed to trial, then Del Valle would have been obliged to honor his client's wishes. *See* Rule 16-102(A) NMRA. But Del Valle was under no obligation to pursue meritless arguments whenever his client felt the need to second-guess his judgment on legal or strategic matters. This claim should be dismissed, and denied to the extent it was not waived.

### c. Fry's claim that his conviction violates the Second Amendment

Fry finally argues that his conviction for possession of a firearm that is not registered in the National Firearms Registration and Transfer Record, in violation of 26 U.S.C. § 5861(d), violates the Second Amendment. Motion to Vacate at 9.

The Government responds that Fry's claim fails on the merits because his possession of the pipe bombs has no connection to any membership in a state-regulated militia. Response at 20 (quoting *United States v. Oakes*, 564 F.2d 384, 387 (10th Cir. 1977)). However, the Supreme Court in *District of Columbia v. Heller*, 554 U.S. 570 (2008), "de-linked the Second Amendment's prefatory clause –'a well regulated militia, being necessary to the security of a free state' – from its operative clause –'the right of the people to keep and bear Arms, shall not be infringed'…." *Colo. Outfitters Ass'n v. Hickenlooper*, 24 F.Supp.3d 1050, 1064 (D. Colo. 2014). Under the Supreme Court's post-*Heller* reading of the Second Amendment, citizens have the right "'to use arms in defense of hearth and home,' and…[may] acquire, use, possess, or

carry lawful firearms for the purpose of self-defense" without being members of state-regulated militias. *Id.* (quoting *Heller*, 554 U.S. at 599).

I do not doubt Fry's sincere belief that he assembled and carried the pipe bombs in his SUV because of a sincere fear of a "hostile world" and the recent kidnap of one of his dear friends in the U.S. Marine Corps. Motion to Vacate at 10. I also do not doubt that his need to carry the pipe bombs stemmed from a desire to "feel comfortable" after six years of combat duty in Iraq.

*Heller*, however, has been read to only trigger constitutional scrutiny of a given law when it is found as an initial matter that the law burdens the possession of weapons "in common use" for the narrow purpose of "self-defense." *Hickenlooper*, 24 F.Supp.3d at 1067; *Heller*, 554 U.S. at 624–25. The pipe bombs Fry possessed are neither in common use nor seriously may they be used for self-defense purposes. The fact that pipe bombs are not in common use is self-evident. As to their use in this case, Fry concedes that he carried the pipe bombs not to defend himself but as a psychological "crutch" that helped him cope with the symptoms of post-traumatic stress disorder. Motion to Vacate at 10; Civ. 14-1045, Doc. 9-2 at 22.

I therefore conclude that Fry waived his argument that his conviction under 26 U.S.C. §§ 5841, 5845(a)(8), 5861(d) and 5871 violated the Second Amendment. To the extent that he did not waive this argument, I conclude that it fails on its merits because pipe bombs are not commonly used for self-defense and Fry did not in fact possess the pipe bombs for the purpose of self-defense.

**V. Conclusion**

      I find that the record conclusively establishes that Fry is not entitled to relief on any of his claims brought under 18 U.S.C. § 2255. I find that all of Fry's claims, with one exception, were waived by the terms of the plea agreement. With respect to Fry's claim that he was coerced into entering the agreement, I conclude that it is frivolous in light of the record, and should therefore be denied without an evidentiary hearing. Finally, I conclude that Fry's Motion to Appoint Counsel, Civ. 14-1045, Doc. 7, should be denied as moot.

> **THE PARTIES ARE FURTHER NOTIFIED THAT WITHIN 14 DAYS OF SERVICE** of a copy of these Proposed Findings and Recommended Disposition they may file written objections with the Clerk of the District Court pursuant to 28 U.S.C. § 636(b)(1). **A party must file any objections with the Clerk of the District Court within the fourteen-day period if that party wants to have appellate review of the proposed findings and recommended disposition. If no objections are filed, no appellate review will be allowed.**

                                                      _/s/ Karen B. Molzen_
                                           UNITED STATES CHIEF MAGISTRATE JUDGE